**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMEL PORTIS,

                              Petitioner,

    v.                                                                 9:16-CV-290
                                                                               (GLS/ATB)

MICHAEL KIRKPATRICK, Superintendent

                              Respondent.

---

JAMEL PORTIS, Petitioner Pro Se
ALYSON J. GILL, Ass't Att'y Gen., for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

**REPORT-RECOMMENDATION**

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, incarcerated at Clinton Correctional Facility, filed this petition, pursuant to 28 U.S.C. § 2254, challenging a 2012 judgment of conviction for Criminal Conspiracy, Second Degree, in the Supreme Court of Albany County. (Petition ("Pet.") at 1).[1] Petitioner was sentenced as a second felony offender, to an indeterminate term of 10 to 20 years imprisonment. The Appellate Division, Third Department unanimously affirmed his conviction, and the New York Court of Appeals denied leave to appeal. *People v. Portis*, 129 A.D.2d 1200 (3d Dep't), *lv. denied*, 26 N.Y. 3d 1091 (2015).

In this application, petitioner raises one ground for relief. He argues that he was

---

[1] The cited pages refer to those generated by the court's electronic filing system ("CM/ECF").

denied the right to due process and the right to a fair trial by an impartial jury due to the admission of "highly prejudicial irrelevant hearsay evidence presented at the trial. . . ." (Pet. at 6). Respondent has filed an answer to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 13, 14, 18).[2] For the following reasons, this court agrees with respondent and will recommend dismissal of the petition.

## DISCUSSION

I. **Relevant Facts**

Respondent has included a detailed description of the facts and procedural history of this case. The court will summarize the relevant facts for clarity, and will discuss specific facts as necessary in the analysis of petitioner's claims. On September 20, 2010, the petitioner and fourteen other defendants were indicted by an Albany County grand jury for Conspiracy, Second Degree. This indictment followed a lengthy investigation by the Organized Crime Task Force of the New York State Attorney General's Office ("OCTF"), involving "controlled buys," wiretaps, and physical surveillance. The purpose of the conspiracy was to obtain, possess, and sell cocaine and heroin in Albany County and elsewhere in New York State. The conspiracy lasted from April 8, 2010 through September 12, 2010.

In addition to the conspiracy, some of the conspirators were charged with substantive counts of varying degrees of criminal sale or criminal possession or

---

[2] Dkt. No. 18 is a "traditionally filed" DVD containing the People's Exhibits 1 and 7 from the petitioner's state court trial. *See also* Dkt. No. 17 (Notice of Conventional Filing).

attempted criminal sale or possession of a controlled substance. Petitioner was charged only with Conspiracy, Second Degree, and his case was severed from that of his co-defendants. His jury trial was held from January 30 until February 3, 2012.

At trial, the prosecution's evidence included the testimony of three investigators, four police detectives, and two of the indicted co-conspirators. The evidence also included the recordings of dozens of intercepted telephone calls and text messages exchanged between co-conspirators, including petitioner. The prosecutor introduced recordings of telephone calls that petitioner made from jail.[3] The prosecutor also introduced a surveillance video, recorded on April 18, 2010, showing petitioner with some of the other co-conspirators; and photographs taken on May 12, 2010 of drugs which were found discarded inside a police vehicle by two of petitioner's co-conspirators. Finally, the prosecutor introduced drugs that were seized during the course of the conspiracy.

OCTF Lead Investigator Dennis Guiry was the prosecution's principal witness. Investigator Guiry testified that the investigation into the conspiracy began in early 2010 with "controlled buy" operations, followed by wiretaps in April. (Guiry 269, 271-72). The wiretaps involved twelve telephones. (Guiry 269). Investigatory Guiry was one of the several investigators who actually listened to the conversations as they were being monitored. (Guiry 273). The prosecutor introduced the recorded conversations as evidence at trial and played them for the jury, while Investigator Guiry testified about

---

[3] The transcripts of the telephone calls and messages were given to the jury, but were not introduced as evidence. (Trial Transcript ("T") 274-75). The respondent has included copies of the transcripts for this court's review as part of the state court record ("SR"). (SR 468-636).

3

the calls and about the meaning of the "coded" language therein. (Guiry 266, 279).
Petitioner's counsel objected to the "hearsay" nature of the telephone calls, but agreed
that if the court were going to admit them, that the transcripts of the calls should be
given to the jury. (Guiry 274). Investigator Guiry testified that he recognized
petitioner's voice, and that he had listed to the intercepted telephone calls forty or fifty
times. (Guity 283-84). Investigatory Guiry also testified that he had listened to
recorded conversations from the Albany County Jail that were "the same voice I heard
in this case being Jamel Portis."[4] (Guiry 284, 428, 433). The petitioner was involved in
several of the telephone calls, but some of the calls involved individuals other than
petitioner. (Guiry 286, 289, 290, 293, 295, 297, 301).

The conversations between several of petitioner's co-defendants often involved
the purchase and sale of narcotics such as crack cocaine, powder cocaine, and
marijuana. (Guiry 301-433). During an April 15, 2010 telephone call in which a co-
defendant called petitioner, they discussed the price of narcotics. (Guiry 310-13).
Petitioner's counsel continued to object to the admission of the telephone calls as
hearsay. (*See e.g.* Guiry 313-14). Reference is made to the respondent's memorandum
of law for further details of the telephone calls, texts, and physical surveillance.
(Resp.'s Mem. of Law at 3-14).

---

[4] Petitioner's nickname was "Flame," and the recordings refer to petitioner by his nickname. (Guiry 295).

## II. Exhaustion/Procedural Default

### A. Legal Standards

#### 1. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

#### 2. Procedural Default

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal

5

claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*.

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner

6

"substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

In addition, if the court finds that petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then be "deemed" exhausted, but would be barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). As stated above, a state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

**B. Application**

**1. Exhaustion**

Respondent argues that petitioner's sole ground for relief is both unexhausted

7

and procedurally defaulted. In his direct appeal, petitioner claimed that "The Trial Court Abused Its Discretion In Admitting Voluminous Hearsay Evidence of Unrelated Drug Activity." (SR 160-67) (Dkt. No. 14-2 at 14-21). Petitioner argued that under New York State Law, the trial court should not have admitted the recordings of all the wiretapped calls because the prosecution did not establish a prima facie showing of Conspiracy. (SR 160). Petitioner cited only New York case law, interpreting New York evidentiary rules.

Petitioner argued that a mistrial should have been granted, and a new trial ordered, "with a different, untainted jury, in order to safeguard Appellant's Due Process rights and fundamental Constitutional rights to a fair trial by an impartial jury." (SR 165). At the end of petitioner's argument, he stated that he "was denied Due Process and a Fair Trial due to the highly prejudicial admittance of extensive hearsay evidence that permeated the trial." (SR 167). The law is clear that simply asserting a broad due process right or right to a "fair trial" is not sufficient to alert the state court to a federal constitutional claim.[5] *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). However,

---

[5] In *Zheng v. Griffen*, No. 16-CV-3368, 2016 WL 3983546, at *6-7 (E.D.N.Y. July 23, 2016), the petitioner challenged the admission of coconspirators' statements. The court found that even though the petitioner cited some federal constitutional authority, the issue was the appropriate application of the co-conspirator exception to the hearsay rule. This issue was "presented to the state court as a mere evidentiary error, not as a federal constitutional claim." *Id.* at *7. In making the determination that petitioner's hearsay claim was unexhausted, the court in *Zheng* stated that no particular right was specified anywhere in his point heading or his appellate argument. *Id.* The court stated that "a simple citation to some constitutional provision might have adequately alerted the Appellate Division to what provision of the Constitution petitioner was referring." *Id.* As an example, the court stated that the petitioner "could have referred to the Confrontation Clause, which is often an issue when co-conspirator statements are admitted." *Id.* Under New York Law, "the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation." *Id.* at *8 (citing *Davis v. Lee*, No. 13 Civ. 3827, 2015 WL 1379024, at *4-5 (S.D.N.Y. Mar. 25, 2015) (citation omitted)).

8

petitioner did include language referring to "fundamental Constitutional rights," and "impartial jury," which could be liberally interpreted as more than simply alleging due process and fair trial.[6]

The People based their response on the "Conspiracy Exception to the Hearsay Rule." (SR 265-78) (Dkt. No. 14-4 at 53-66). The prosecution's brief cited to New York State cases, interpreting New York State Law. *See* SR 265 (citing inter alia *People v. Sanders*, 56 N.Y.2d 51, 62 (1982) ("In this State, it has long been settled that the declarations of one coconspirator made in the course and furtherance of a conspiracy are admissible against all other coconspirators as an exception to the general rule against hearsay.") (other citations omitted)). The prosecutor then argued that the People had established a prima facie case of conspiracy at trial. There was no citation of federal law and no citation to, or discussion of, constitutional principles.

In the Appellate Division's decision, affirming petitioner's conviction, the court based its analysis of this issue purely on New York State law, and its requirement that admissibility of coconspirators' statements is permitted when the People have produced

---

Petitioner in *Zheng* did not even contend that the evidentiary error was so serious that his rights under the Due Process Clause of the 5th and 14th Amendments had been violated. This case is arguably different from *Zheng* in that it is arguable that petitioner did attempt to cite to constitutional principles. *See also Riedel v. Perez*, No. CV-08-3593, 2012 WL 3598829, at *7-10 (E.D.N.Y. Aug. 15, 2012) (finding that petitioner exhausted his state court remedies with respect to his hearsay argument when he raised the same hearsay argument in both state court and his federal petition, without any discussion of the federal constitution).

[6] The Sixth Amendment makes reference to the "accused" enjoying the right to trial by an "impartial jury." U.S. Const. amend. VI. Generally, this refers to jurors who have no preconceived notion of the guilt or innocence of the accused. *Wilson v. Bradt*, No. 13 Civ. 6937, 2014 WL 4116960, at *19 (S.D.N.Y. Aug. 20, 2014) (finding that petitioner's treatment of his "impartial jury" claim was insufficient to exhaust such a claim because he never cited to "the federal standard governing claims of juror bias).

9

"otherwise admissible proof 'of an agreement to commit a crime and an overt act towards carrying out that agreement.'" (Dkt. No. 1 at CM/ECF p.18) (citing inter alia *People v. Nicholas*, 118 A.D.3d 1183, 1184 (3d Dep't 2014)). The court then discussed the non-hearsay evidence produced by the prosecution that would justify the admission of the co-conspirators' recorded telephone calls. (Dkt. No. 1 at CM/ECF 18-19).

In petitioner's application for leave to appeal to the court of appeals, he omitted any reference to the constitution in the statement of his hearsay argument. (SR 643). He argued only that the trial court committed reversible error by allowing voluminous hearsay evidence without the People first establishing a prima facie showing of Conspiracy. He further stated that it was an "abuse of discretion" to allow such voluminous hearsay evidence. (*Id.*) Petitioner may have done so because the Appellate Division relied only on the New York State evidentiary rule. When a petitioner omits an argument in his leave application before the court of appeals, that claim is unexhausted, notwithstanding his inclusion of the Appellate Division briefs which raised the issue.[7] *Brown v. Perlman*, No. 07 Civ. 8672, 2008 WL 2009220, at *20-22 & nn. 36 & 37 (S.D.N.Y. May 8, 2008) (discussing multiple Second Circuit and district court cases); *Alston v. Senkowski*, 210 F. Supp. 2d 413, 417-18 (S.D.N.Y. 2002) (citing

---

[7] In this case, petitioner's counsel merely noted that "[t]he following documents have been enclosed herein for your review." (SR 642) (listing six documents, including the petitioner's and the People's briefs to the Appellate Division). *Galdamez v. Keane*, 394 F.3d 68 (2d Cir. 2005) does not change this court's finding. In *Galdamez*, the Second Circuit held that when a defendant files a letter to the New York Court of Appeals, attaching his appellate briefs, and requesting the Court to consider all the arguments in the Appellate Brief without specifying any particular issues, the defendant fairly presented all the claims in the Appellate Brief. *Id.* *Galdamez* specifically did not overrule or change the finding in *Grey v. Hoke. Id.* at 74.

*Grey v. Hoke*, 933 F.2d 117 (2d Cir. 1991)).

The court notes that the other claims petitioner included in his application for leave to appeal did contain the "due process" and "fair trial" language. In fact, petitioner lists his "questions of law" numerically, and then explains each one in a subsequent paragraph with the same number. (SR 643). The hearsay issue refers only to the state evidentiary rule, while petitioner also claimed that he was "denied a fair trial and due process" due to highly prejudicial "uncharged crime evidence," a claim totally separate from his hearsay argument, and one which he does not raise herein. (*Id.*) Petitioner's omission of the arguably "constitutional" argument from the hearsay argument in his letter requesting leave to appeal, when he kept the language in his remaining claims, indicates that he intended to omit the argument, rendering the claim unexhausted, even if the court assumes that his Appellate Division brief sufficiently raised the federal constitutional claim.

### 2. Procedural Default

If petitioner's claim is unexhausted, he cannot return to state court to exhaust the issue. Because the hearsay claim is "record-based," it was appropriately raised on direct appeal. He has already filed a direct appeal in the Appellate Division. He cannot return to the Court of Appeals because New York permits only one application for direct review. *Oquendo v. Senkowski*, 452 F. Supp. 2d 359, 368 (S.D.N.Y. 2006) (citing *Spence v. Superintendent*, 219 F.3d 162, 169-70 (2d Cir. 2000); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)); N.Y. Rules of Court, Court of Appeals § 500.20. Petitioner would also be unsuccessful in moving to vacate his conviction pursuant to N.Y. Crim.

Proc. Law § 440.10 because the claim would be dismissed due to petitioner's unjustifiable failure to raise the record-based federal claim on direct appeal. *Id.* § 440.10(2)(c). The claim is, therefore, "deemed exhausted," but is subject to a procedural bar. This procedural bar is independent and adequate, and is consistently applied. *See Clark v. Perez*, 510 F.3d at 393 (discussing § 440.10(2)(c)).

Petitioner has not cited any cause or prejudice resulting from an alleged constitutional violation. To qualify for the fundamental miscarriage of justice exception, the petitioner must have a claim of "actual innocence that is both 'credible' and 'compelling.'" *Rivas*, 687 F.3d at 541 (quoting *House v. Bell*, 547 U.S. 518, 521, 538 (2006)). Petitioner has not claimed actual innocence. Thus, if petitioner's hearsay claim is unexhausted, it must be dismissed as procedurally barred. If the court should determine that petitioner's claim is exhausted, the court has also considered alternate bases for dismissal on the merits.

## III. Cognizable Claim

### A. Legal Standards

Section 2254 provides that an application for writ of habeas corpus will be entertained on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims that are rooted in alleged errors of state law are not cognizable in a federal habeas corpus action. *See Swarthout v. Cooke*, 562 U.S. 216, __, 131 S. Ct. 859, 860 (2011) (habeas statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States"); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (federal habeas relief does not lie for errors of state law).

B. **Application**

Petitioner's hearsay claim is rooted in state law and would not be cognizable on federal habeas review. In his federal application, petitioner merely re-states the evidentiary argument that he made in the Appellate Division. Thus, this court may not re-examine matters of New York State law, and petitioner's hearsay claim also may be dismissed on that basis. However, the court also finds, that even if the petitioner's claim were exhausted and cognizable, it fails on the merits.

IV. **Evidentiary Rulings**

A. **Legal Standards**

As stated above, federal habeas review is not available to challenge errors of state law. *Swarthout, supra*. Challenges to the admissibility of evidence are cognizable only if the petitioner can establish the erroneous decision to admit the evidence rendered the trial so fundamentally unfair as to deny the petitioner due process of law or that the evidence was so "extremely unfair that is admission violate[d] fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The question is whether the "erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it . . . [i]t must have been 'crucial, critical, highly significant.'" *Corse v. Heath*, No. 11-CV-5371, 2016 WL 4257759, at *12-13 (E.D.N.Y. Aug. 11, 2016) (quoting

13

*Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 16, 19 (2d Cir. 1985) (additional citation omitted). In making this determination, the court must first find that the evidentiary ruling was erroneous under New York law, and if so, whether that error amounted to the denial of a fundamentally unfair trial. *Id. See Jamison v. Griffin*, No. 15 Civ. 6716, 2016 WL 1698350, at *35 (S.D.N.Y. Apr. 27, 2016) (citations omitted).[8]

### B. Application

In this case, the Appellate Division noted that participants in a conspiracy are deemed responsible for "'any declaration by a conspirator made during the course of and in furtherance of the conspiracy. . . .'" 129 A.D.2d at 1301. Such declarations are admissible against the co-conspirators as exceptions to the hearsay rule. *Id.* (citations omitted). Petitioner did not contest this statement of the law. In order to rely on the hearsay evidence, the prosecutor must establish a prima facie case of conspiracy, by producing otherwise admissible "proof of an agreement to commit a crime and an overt act towards carrying out that agreement." *Id.* The Appellate Division found that the trial court correctly determined that the People met this burden.

---

[8] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the merits of a petitioner's *constitutional* claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also*, *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001). The Appellate Division in this case decided the merits of a state law evidentiary claim. In any event, as discussed below, the court need not apply the constitutional analysis because the evidentiary ruling was not erroneous under New York law. *Jamison v. Griffin*, *supra* (citing *Williams v. Walker*, No. 00-CV-5912, 2001 WL 1352105 at *3 (E.D.N.Y. Oct. 31, 2001) (habeas court must first determine if ruling was erroneous under state law, and then whether ruling was of a constitutional magnitude)).

Petitioner was convicted only of the conspiracy charge. In order to justify the admission of the tape recorded evidence, the prosecutor was required to show that the petitioner was part of the conspiracy to knowingly and unlawfully sell a narcotic drug of an aggregate weight of one-half ounce or more. (citing N.Y. Penal Law § 220.41(1)). The hearsay evidence may be admitted "subject to later proof of a prima facie case of conspiracy." *People v. Caban*, 5 N.Y.3d 143, 151 (2005). Thus, the testimony establishing the prima facie case need not precede testimony about the hearsay statements at trial as long as the statements were made after the formulation of the conspiracy. *Id.* The evidence is admitted "'subject to connection'" – that is, subject to later proof of a prima facie case." *Id.*

Under New York law, a conspiracy exists if there is an "agreement to commit an underlying substantive crime,[9] which may be proven by circumstantial evidence. *People v. Rifino*, __ N.Y.S.3d __, 2016 WL 5795281 (2d Dep't Oct. 5, 2016) (citing *Caban*, 5 N.Y.3d at 149); *People v. Augustine*, 235 A.D.2d 915, 920 (3d Dep't 1997) (citing *People v. Flack*, 125 N.Y. 324, 333 (1891)). The second element of conspiracy is an "overt act" committed by one of the co-conspirators in furtherance of the conspiracy, which may, but does not need to be, the underlying substantive crime. *Id.*; *People v. McGee*, 49 N.Y.2d 48, 57 (1979). Finally, once the illicit agreement is established, the overt act of any of the co-conspirators may be attributed to other conspirators to establish the conspiracy offense. *Id.*

---

[9] In this case, the underlying substantive crime was criminal sale of a controlled substance, second degree pursuant to N.Y. Penal Law §§ 105.15, 105.20.

Investigator Guiry testified regarding many telephone calls which surrounded the conspiracy. These telephone calls were discussed prior to trial. (Dkt. No. 14-5 at 1-13). The court found that these telephone calls were "centrally related" to the prosecutor's burden to show "acting in concert" or "conspiracy" and would be acts "that will underlie such a conviction." (*Id.* at 13). Several of those calls involved the defendant himself and were not hearsay.[10] The court also noted that defense counsel had "full access" to the telephone calls for "over a year." (*Id.*)

The Appellate Division first stated that the conversations in which petitioner was a participant were not hearsay and could be received as "party admissions," citing specifically to a telephone conversation dated April 18, 2010 during which petitioner agreed to meet with several of the alleged co-conspirators and bring his "paperwork" to the meeting. 129 A.D.2d at 1301. *See* SR at 591. While petitioner was on his way to the meeting, his co-conspirator was busy arranging for the sale of narcotics. The sale was discussed in a separate intercepted conversation. The Appellate Division held that the conversation regarding the narcotics sale was not hearsay because it was not admitted for the truth of the statements, but merely for the fact that the statements were made. The co-conspirator agreed to sell one half ounce of cocaine to an individual who would arrive in a "distinctive vehicle." *Id.* An investigator testified that he observed the

---

[10] Defense counsel was particularly concerned about one telephone in which petitioner appeared to be involved, in which there was some discussion about robbing another individual. (Dkt. No. 14-5 at 10-12). The discussion was in the context of the court's *Molineux* ruling. *People v. Molineux*, 61 N.E. 286 (N.Y. 1901) involves the decision to admit evidence of a defendant's uncharged crimes or other bad acts. Defense counsel claimed that admitting the telephone call in which the "robbery" was being discussed was prejudicial to petitioner's case. (Dkt. No. 14-5 at 12).

16

petitioner arrive for the meeting, and also observed the subsequent arrival of the "customer," together with other activity consistent with the sale. *Id.* at 1301-02. The court found that, although circumstantial, the evidence was sufficient in itself to make out a prima facie case against the defendant. *Id.*

As respondent points out, two telephone calls from April 15, 2010, in which petitioner was a participant, demonstrated petitioner's involvement in the conspiracy. (Resp. Mem. of Law at 29-31). On April 15, 2010, "Lex"[11] complained to petitioner that another dealer was charging "sixty" for drugs. (SR 540). Lex stated that he was not going to pay sixty when "the shit is thirty-six in the . . . town." (SR 541). Petitioner told Lex that "he's got some good shit but still." (*Id.*) Petitioner knew the other seller by the name of "Hoop." (*Id.*) Lex asked whether they should "sunstroke"[12] the individual. (*Id.*) In a subsequent telephone call involving petitioner, Lex was still complaining about being charged sixty dollars for a gram. (SR 543). These telephone calls alone support the finding that petitioner was well aware of the organization and was involved in discussions regarding the purchase and sale of drugs.[13] A review of the

---

[11] Based on the testimony at trial from the co-conspirators and the transcripts of the intercepted telephone calls, "Lex" was clearly the "leader" or the central figure in the conspiracy.

[12] "Sunstroke" means "rob." (Guiry 310). This is the conversation that defense counsel attempted to keep out of the trial because it "implied" that petitioner was involved in other bad acts, even though petitioner did not agree to rob anyone. The discussion was not admitted to show that a robbery was discussed, but that petitioner was involved in the drug conspiracy. In any event, the petitioner did participate in this conversation, and it was not hearsay.

[13] As respondent points out, there are several intercepted telephone calls in which the participants refer to petitioner  "Flame" or "Flames." (SR 504, 507-508, 553, 555, 593, 608-609). These telephone calls mostly refer to picking petitioner up for meetings, but it is clear that the individuals involved are members of the conspiracy.

17

remainder of the transcripts of the recorded telephone calls supports the Appellate Division's determination that the prosecutor set forth a prima facie case, sufficient to admit the hearsay statements. (SR 469-635). There is no showing that the state court's evidentiary ruling was erroneous, and thus, the court need not proceed further with the constitutional analysis. The petition may be denied and dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: October 12, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge